Brandon H. Brown (SBN 266347)
bhbrown@kirkland.com
Barbara N. Barath (SBN 268146)
barbara.barath@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Christopher M. Lawless (SBN 268952)
christopher.lawless@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Gregory S. Arovas (*pro hac vice* to be filed)
greg.arovas@kirkland.com
Todd M. Friedman (*pro hac vice* to be filed)
tfriedman@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

*Attorneys for Plaintiff Intel Corporation*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| INTEL CORPORATION, | CASE NO. 3:21-cv-3398 |
| Plaintiff, | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| v. | **DEMAND FOR JURY TRIAL** |
| TRENCHANT BLADE TECHNOLOGIES, LLC AND LONGHORN IP LLC, | |
| Defendants. | |

Plaintiff Intel Corporation ("Intel"), for its Complaint against Defendants Trenchant Blade Technologies, LLC ("Trenchant") and Longhorn IP LLC ("Longhorn") (collectively, "Defendants"), alleges as follows. Each allegation in this Complaint either has evidentiary support based on public information available to Intel or disclosures from Defendants, or is likely to have evidentiary support after a reasonable opportunity for further investigation and discovery.

**NATURE OF THE ACTION**

1. This action arises from Defendants' efforts at enforcement of United States Patent No. 7,056,821 (the "'821 Patent"), U.S. Patent No. 6,720,619 (the "'619 Patent"), U.S. Patent No. 7,511,332 (the "'332 Patent"), U.S. Patent No. 7,498,642 (the "'642 Patent"), or U.S. Patent No. 7,494,846 (the "'846 Patent") (collectively, the "Patents-in-Suit"). Intel asserts claims for declaratory judgment of non-infringement of the Patents-in-Suit pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the Patent Laws of the United States, 35 U.S.C. § 100 *et seq.*, and for such other relief as the Court deems just and proper.

**THE PARTIES**

2. Intel is a corporation organized and existing under the laws of the State of Delaware having its principal place of business at 2200 Mission College Boulevard, Santa Clara, California 95054. Intel does business in the Northern District of California ("District").

3. Upon information and belief, Trenchant is a limited liability company existing under the laws of the state of Texas having its principal place of business at 5204 Bluewater Drive, Frisco, Texas 75034. Upon information and belief, Trenchant is a non-practicing entity, which aims to license its patent portfolio to others.

4. Upon information and belief, Longhorn is a limited liability company existing under the laws of the state of Texas having its principal place of business at 8105 Rasor Boulevard, Suite 210, Plano, Texas 75024. Upon information and belief, Longhorn is a non-practicing entity, which aims to license its patent portfolio to others.

**JURISDICTION AND VENUE**

5. This Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202, and the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*.

6. Intel brings this suit based on an actual, substantial, and continuing justiciable controversy existing between Intel and Defendants regarding whether Intel's products or processes infringe the Patents-in-Suit. As described in more detail below, this controversy arises out of Longhorn's and Trenchant's infringement assertions and licensing demands to Intel, in which Longhorn and Trenchant broadly allege that the Patents-in-Suit cover technologies implemented by Intel's products and processes and that Intel requires a license. Intel accordingly requests a judicial determination of its rights regarding the Patents-in-Suit.

7. This Court has personal jurisdiction over Trenchant and Longhorn by virtue of their sufficient minimum contacts with this forum. Upon information and belief, Defendants, directly or through their agents and alter egos, have regularly conducted business activities in California, and this action arises out of and relates to activities that Defendants have purposefully directed at California and this District. Among other things, Defendants purposefully directed allegations of patent infringement to Intel, a resident of this District, by sending a patent assertion letter to Intel (the "Patent Assertion Letter") alleging that Intel and its affiliates/subsidiaries infringe one or more claims of the Patents-in-Suit. The letter was addressed and directed to Intel's Santa Clara, California office, which is in this District. A true and correct copy of the Patent Assertion Letter is attached as Exhibit A.

8. Defendants subsequently met with Intel representatives who are based in this District and attended the meeting from this District to discuss Defendants' infringement assertions. Additional discussions relating to Defendants' infringement allegations continued and included Intel representatives who are based in this District and attended from this District.

9. The Intel products and activities that Defendants accuse of infringing the Patents-in-Suit were developed and/or performed by Intel, including development and sales activities taking place in this District.

10. Upon information and belief, Longhorn's associated entities, including Trenchant, Katana Silicon Technologies, LLC ("KST"), Lone Star Silicon Innovations LLC ("Lone Star"), and others, are alter egos of Longhorn. Upon information and belief, Longhorn dominates and controls the actions of its associated entities and, specifically, directs and controls their patent enforcement activities. Longhorn's associated entities do not appear to have separate websites, and are identified on Longhorn's website, longhornip.com, as mere "Portfolio" entities holding IP assets for the benefit of Longhorn.

11. Upon information and belief, Longhorn's associated entities, under the control of Longhorn President and CEO Khaled Fekih-Romdhane, have accused several companies residing in this District of patent infringement. For example, KST brought an action for patent infringement against Taiwan Semiconductor Manufacturing Company, Ltd. and two of its California subsidiaries residing in this District (collectively, "TSMC"), in the Western District of Texas (Case No. 6:19-cv-00695). Upon information and belief, Defendants obtained the Patents-in-Suit in a settlement of that lawsuit. In particular, upon information and belief, Mr. Fekih-Romdhane caused Trenchant to be created in January 2020 and caused TSMC to assign Trenchant the Patents-in-Suit.

12. Further, Longhorn, by and through its subsidiary, Lone Star, filed lawsuits in this District in 2017 against STMicroelectronics, Inc. ("STM") (Case No. 3:17-cv-07206) and in 2018 against Micron Technology, Inc. ("Micron") (Case No. 3:18-cv-01680). Further, Lone Star consented to transfer of cases to this District from the Eastern District of Texas on several occasions. *See Lone Star Silicon Innovations LLC v. Renesas Electronics Corporation et al.*, Case No. 3:17-cv-03981 (N.D. Cal.) (Dkt. No. 43); *Lone Star Silicon Innovations LLC v. Semiconductor Manufacturing International Corporation et al.*, Case No. 3:17-cv-03980 (N.D. Cal.) (Dkt. No. 33); *Lone Star Silicon Innovations LLC v. United Microelectronics Corporation et al.*, Case No. 3:17-cv-04033 (N.D. Cal.) (Dkt. No. 28); *Lone Star Silicon Innovations LLC v. Toshiba Corporation et al.*, Case No. 3:17-cv-04034 (N.D. Cal.) (Dkt. No. 153); *Lone Star Silicon Innovations LLC v. Nanya Technology Corporation et al.*, Case No. 3:17-cv-04032 (N.D. Cal.) (Dkt. No. 28). Upon information and belief, Longhorn representatives traveled to California for these matters in furtherance of their patent licensing business.

13. Upon information and belief, Longhorn and its associated entities engage in licensing, patent acquisition, and litigation activities in this District, which activities Longhorn announces and advertises on Longhorn's website, www.longhornip.com/news.

14. Upon information and belief, Mr. Fekih-Romdhane is the common representative of Longhorn's associated entities, and he acts and negotiates on their collective behalf. For example, Mr. Fekih-Romdhane uses Longhorn IP letterhead and his Longhorn IP email address when communicating on behalf of Longhorn's alter ego entities, including Trenchant. Mr. Fekih-Romdhane is also Trenchant's sole manager. On information and belief, Trenchant has no employees of its own, and its registered place of business is Mr. Fekih-Romdhane's home address. Trenchant executed a licensing service agreement with Longhorn to act as Trenchant's agent and monetize its patents.

15. Upon information and belief, Mr. Fekih-Romdhane and Longhorn create entities for the purpose of assigning intellectual property rights, widely licensing such rights, and bringing infringement suits by and through its associated entities. Upon information and belief, Longhorn has created its associated entities to allow its alter egos to assert infringement claims nationally or globally while attempting to limit or insulate itself and its associated entities from being subject to personal jurisdiction outside of Texas.

16. Upon information and belief, Defendants and their agents and alter egos have sent, or caused to be sent, other patent assertion and/or licensing demand letters to other persons and/or companies in this District as part of its patent licensing business. Upon information and belief, Defendants and their agents and alter egos have charged infringement and threatened litigation against numerous companies residing and conducting business in this District.

17. For example, in the patent assertion letter directed to Intel giving rise to this matter, Defendants stated their intent to negotiate and enter into license agreements for the Patents-in-Suit with companies either resident in this District or with operations and/or subsidiaries located in this District, including "Samsung, Micron, SK hynix, Global Foundries, UMC, and SMIC."

18. Upon information and belief, Defendants sent such a patent assertion letter to at least Samsung alleging that Samsung infringes the Trenchant patent portfolio, including at least the '846,

'821, and '619 patents at issue in this action. As a result, Samsung filed a declaratory judgment action in this District. *See Samsung Electronics Co. Ltd. et al v. Trenchant Blade Technologies, LLC et al*, Case No. 3:20-cv-08205 (N.D. Cal. Nov. 20, 2020), ECF No. 1. In that complaint, Samsung alleged that, prior to Samsung filing its complaint, Samsung and Defendants engaged in licensing negotiations that included Samsung representatives participating from this District.

19. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

**INTRADISTRICT ASSIGNMENT**

20. This case is an Intellectual Property Action under Civil Local Rule 3-2(c) and, pursuant to Civil Local Rule 3-5(b), shall be assigned on a district-wide basis.

**FACTUAL ALLEGATIONS**
**PATENTS-IN-SUIT**

21. The '821 Patent states on its cover that it was issued on June 6, 2006, and names as inventors Chin-Tien Yang of Hsinchu, Taiwan; Juan-Jann Jou of Tainan Hsien, Taiwan; Yu-Hua Lee of Hsinchu, Taiwan; and Chia-Hung Lai of Hsinchu, Taiwan. The '821 Patent also states that the initial assignee of the '821 Patent was Taiwan Semiconductor Manufacturing Company, Ltd. of Hsin-Chu, Taiwan. On information and belief, Trenchant purports to own by assignment the '821 Patent. A copy of the '821 patent is attached hereto as Exhibit B.

22. The '619 Patent states on its cover that it was issued on April 13, 2004, and names as inventors Hao-Yu Chen, of Kaoshiung, Taiwan; Yee-Chia Yeo of Albany, CA; Fu-Liang Yang of Hsin-Chu, Taiwan; and Chenming Hu of Hsin-Chu, Taiwan. The '619 Patent also states that the initial assignee of the '619 Patent was Taiwan Semiconductor Manufacturing Company, Ltd. of Hsin-Chu, Taiwan. On information and belief, Trenchant purports to own by assignment the '619 Patent. A copy of the '619 patent is attached hereto as Exhibit C.

23. The '332 Patent states on its cover that it was issued on March 31, 2009, and names as inventor Shih-I Yang of Taipei, Taiwan. The '332 Patent also states that the initial assignee of the '332 Patent was Taiwan Semiconductor Manufacturing Company, Ltd. of Hsinchu, Taiwan. On information

and belief, Trenchant purports to own by assignment the '332 Patent. A copy of the '332 patent is attached hereto as Exhibit D.

24. The '642 Patent states on its cover that it was issued on March 3, 2009, and names as inventors Chien-Hao Chen of Chuangwei Township, Taiwan; Chun-Feng Nieh of Baoshan Township, Taiwan; Karen Mai of Jhonghe, Taiwan; and Tze-Liang Lee of Hsinchu, Taiwan. The '642 Patent also states that the initial assignee of the '642 Patent was Taiwan Semiconductor Manufacturing Company, Ltd. of Hsin-Chu, Taiwan. On information and belief, Trenchant purports to own by assignment the '642 Patent. A copy of the '642 patent is attached hereto as Exhibit E.

25. The '846 Patent states on its cover that it was issued on February 24, 2009, and names as inventors Chao-Shun Hsu of San-Shin, Taiwan; Louis Liu of Hsin-Chu, Taiwan; Clinton Chao of Hsin-Chu, Taiwan; and Mark Shane Peng of Hsin-Chu, Taiwan. The '846 Patent also states that the initial assignee of the '846 Patent was Taiwan Semiconductor Manufacturing Company, Ltd. of Hsin-Chu, Taiwan. On information and belief, Trenchant purports to own by assignment the '846 Patent. A copy of the '846 patent is attached hereto as Exhibit F.

**DISPUTE BETWEEN INTEL AND DEFENDANTS**

26. On April 19, 2020, Mr. Fekih-Romdhane, as President and CEO of Longhorn, sent the Patent Assertion Letter to Intel alleging infringement of the Trenchant patent portfolio and contending Longhorn was authorized by Trenchant to negotiate a license for Intel to that portfolio.

27. The Patent Assertion Letter defines Intel to include its "subsidiaries/affiliates" and specifically accuses Intel of importing into the United States, and selling and offering to sell in the United States "integrated circuit devices that infringe one or more of the [Trenchant] patents." It further accuses Intel of "induc[ing] other companies, such as distributors, resellers and end-users, to perform one or more of these infringing acts in the United States."

28. The Patent Assertion Letter further discusses Longhorn's intent to license the patent portfolio to other companies, including Samsung, Micron, SK hynix, Global Foundries, UMC and SMIC.

29. Intel denied any alleged infringement. Individuals at Intel discussed with Mr. Fekih-Romdhane potential resolutions of Defendants' patent infringement allegations. Despite several conversations, the parties did not reach agreement and concluded their discussions without a resolution of Defendants' infringement allegations.

**COUNT I**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,056,821**

30. Intel repeats and realleges the allegations in paragraphs 1–29 of its Complaint.

31. Defendants have asserted and continue to assert that Intel and its subsidiaries/affiliates infringe one or more claims of the '821 Patent by importing into, and selling and offering for sale, in the United States certain products and that Intel and its subsidiaries/affiliates induce others to infringe one or more claims of the '821 Patent. In particular, Defendants alleged that "all integrated circuit devices made using the Intel 10 nm, 14 nm and 20 nm advanced process nodes as shown, for example, [in] Intel i3-812U Cannon Lake using Intel's 10 nm node FinFet high-k metal gate (HKMG) CMOS process and Intel Broadwell SR217 Core M-5Y10 Microprocessor using 14 nm node FinFet transistor manufacturing process" (collectively, "'821 Patent Accused Products") infringe at least claims 1, 2, 3, 4, 5, 6, 9, 10, 11, 12, 13, and 14 of the '821 Patent.

32. Intel and Intel's subsidiaries/affiliates have not and do not directly or indirectly infringe any claim of the '821 Patent, either literally or under the doctrine of equivalents, through the importation, manufacture, use, sale, and/or offer for sale of the '821 Patent Accused Products. Intel and Intel's subsidiaries/affiliates do not indirectly infringe any claim of the '821 Patent at least because there is no direct infringement.

33. For example, claim 1 of the '821 Patent, upon which all the '821 Patent claims depend, requires, *inter alia*, "forming a trench," "filling with a sacrificial layer into the trench," and "planarizing the sacrificial layer." The '821 Patent Accused Products are not manufactured by "planarizing the sacrificial layer," as required by all the claims of the '821 Patent.

34. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

35. A judicial declaration is necessary and appropriate so that Intel may ascertain its rights regarding the '821 Patent.

36. Intel is entitled to a judicial declaration that it has not infringed and does not infringe the '821 Patent.

**COUNT II**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 6,720,619**

37. Intel repeats and realleges the allegations in paragraphs 1–36 of its Complaint.

38. Defendants have asserted and continue to assert that Intel and its subsidiaries/affiliates infringe one or more claims of the '619 Patent by importing into, and selling and offering for sale, in the United States certain products and that Intel and its subsidiaries/affiliates induce others to infringe one or more claims of the '619 Patent.  In particular, Defendants alleged that "all integrated circuit devices made using the Intel 10 nm and 14 nm advanced node FinFet transistors process, as shown, for example, in Intel i3-812U Cannon using Intel's 10 nm node FinFet high-k metal gate (HKMG) CMOS process and Intel Broadwell SR217 Core M-5Y10 Microprocessor using 14 nm node FinFet transistor manufacturing process" (collectively, "'619 Patent Accused Products") infringe at least claims 1, 3, 4, 5, 6, 7, 10, 13, 14, and 15 of the '619 Patent.

39.  Intel and Intel's subsidiaries/affiliates have not and do not directly or indirectly infringe any claim of the '619 Patent, either literally or under the doctrine of equivalents, through the importation, manufacture, use, sale, and/or offer for sale of the '619 Patent Accused Products.  Intel and Intel's subsidiaries/affiliates do not indirectly infringe any claim of the '619 Patent at least because there is no direct infringement.

40. For example, the '619 Patent Accused Products do not use semiconductor-on-insulator (SOI) substrates, as required by all claims of the '619 Patent.

41. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

42. A judicial declaration is necessary and appropriate so that Intel may ascertain its rights regarding the '619 Patent.

43. Intel is entitled to a judicial declaration that it has not infringed and does not infringe the '619 Patent.

**COUNT III**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,511,332**

44. Intel repeats and realleges the allegations in paragraphs 1–43 of its Complaint.

45. Defendants have asserted and continue to assert that Intel and its subsidiaries/affiliates infringe one or more claims of the '332 Patent by importing into, and selling and offering for sale, in the United States certain products and that Intel and its subsidiaries/affiliates induce others to infringe one or more claims of the '332 Patent. In particular, Defendants alleged that "all integrated circuit devices made using the vertical array of flash memory cells, as shown, for example, in the Intel B17A 512Gb using Intel's 20 nm 64L 3D2 NAND triple-level cell (TLC) CMOS process in which the vertical NAND flash memory cells are manufactured to provide a stackable flash memory array to increase storage capacity" (collectively, "'332 Patent Accused Products") infringe at least claims 1, 4, and 5 of the '332 Patent.

46. Intel and Intel's subsidiaries/affiliates have not and do not directly or indirectly infringe any claim of the '332 Patent, either literally or under the doctrine of equivalents, through the importation, manufacture, use, sale, and/or offer for sale of the '332 Patent Accused Products. Intel and Intel's subsidiaries/affiliates do not indirectly infringe any claim of the '332 Patent at least because there is no direct infringement.

47. For example, the '332 Patent Accused Products products do not include a "source line" or "a plurality of source-lines" as required by all claims of the '332 Patent.

48. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

49. A judicial declaration is necessary and appropriate so that Intel may ascertain its rights regarding the '332 Patent.

50. Intel is entitled to a judicial declaration that it has not infringed and does not infringe the '332 Patent.

**COUNT IV**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,498,642**

51. Intel repeats and realleges the allegations in paragraphs 1–50 of its Complaint.

52. Defendants have asserted and continue to assert that Intel and its subsidiaries/affiliates infringe one or more claims of the '642 Patent by importing into, and selling and offering for sale, in the United States certain products and that Intel and its subsidiaries/affiliates induce others to infringe one or more claims of the '642 Patent. For example, the Patent Assertion Letter asserts that Trenchant owns a portfolio of patents and that "[w]e believe that products of Intel Corporation and its subsidiaries/affiliates ('Intel') infringe [Trenchant's] patented semiconductor technologies and are made using infringing fabrication methods, and thus require a license" and in particular that Intel's "integrated circuit devices … infringe one or more of the [Trenchant] patents." Trenchant's portfolio includes the '642 Patent. Further, during the parties' post-Patent Assertion Letter discussions, Defendants alleged that Intel infringes at least claim 11 of the '642 Patent.

53. Intel and Intel's subsidiaries/affiliates have not and do not directly or indirectly infringe any claim of the '642 Patent, either literally or under the doctrine of equivalents, through the importation, manufacture, use, sale, and/or offer for sale of Intel's integrated circuit devices. Intel and Intel's subsidiaries/affiliates do not indirectly infringe any claim of the '642 Patent at least because there is no direct infringement.

54. For example, Intel's accused products do not use a "diffusion-retarding region that comprises fluorine," as required by all claims of the '642 Patent.

55. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

56. A judicial declaration is necessary and appropriate so that Intel may ascertain its rights regarding the '642 Patent.

57. Intel is entitled to a judicial declaration that it has not infringed and does not infringe the '642 Patent.

**COUNT V**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 7,494,846**

58. Intel repeats and realleges the allegations in paragraphs 1–57 of its Complaint.

59. Defendants have asserted and continue to assert that Intel and its subsidiaries/affiliates infringe one or more claims of the '846 Patent by importing into, and selling and offering for sale, in the United States certain products and that Intel and its subsidiaries/affiliates induce others to infringe one or more claims of the '846 Patent. For example, the Patent Assertion Letter asserts that Trenchant owns a portfolio of patents and that "[w]e believe that products of Intel Corporation and its subsidiaries/affiliates ('Intel') infringe [Trenchant's] patented semiconductor technologies and are made using infringing fabrication methods, and thus require a license" and in particular that Intel's "integrated circuit devices … infringe one or more of the [Trenchant] patents." Trenchant's portfolio, which on information and belief only includes five patents, also includes the '846 Patent.

60. Intel and Intel's subsidiaries/affiliates have not and do not directly or indirectly infringe any claim of the '846 Patent, either literally or under the doctrine of equivalents, through the importation, manufacture, use, sale, and/or offer for sale of Intel's integrated circuit devices. Intel and Intel's subsidiaries/affiliates do not indirectly infringe any claim of the '846 Patent at least because there is no direct infringement.

61. For example, one of the two independent claims of the '846 Patent, claim 1, requires "a first semiconductor die and a second semiconductor die [that are both] identical [and] … vertically aligned." The independent claims of the '846 Patent, claim 12, requires "a first memory die and a second memory die identical to the first memory die," wherein "the first memory die and the second semiconductor dies are vertically aligned." Intel's accused products do not have first and second semiconductor/memory die that are "identical" and "vertically aligned," as required by all the claims of the '846 Patent.

62. As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

63. A judicial declaration is necessary and appropriate so that Intel may ascertain its rights regarding the '846 Patent.

64. Intel is entitled to a judicial declaration that it has not infringed and does not infringe the '846 Patent.

## JURY DEMAND

65. Pursuant to Fed. R. Civ. P. Rule 38(b), Intel hereby demands a trial by jury on all issues and claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, Intel requests that judgment be entered in its favor and prays that the Court grant the following relief:

1. An order enjoining Defendants and their officers, agents, servants, employees, attorneys, and those in active concert or participation with them from asserting infringement or instituting or continuing any action for infringement of the Patents-in-Suit against Intel or its subsidiaries, affiliates, customers (direct or indirect), distributors (direct or indirect), agents (direct or indirect), or contractors (direct or indirect);

2. A declaration that Intel and its subsidiaries/affiliates have not infringed and do not infringe, either directly or indirectly, any claim of the Patents-in-Suit, either literally or under the Doctrine of Equivalents;

3. An order declaring that this is an exceptional case, and awarding Intel its costs and reasonable attorney fees under 35 U.S.C. § 285; and

Such other and further relief as this Court may deem just and proper.

| | |
|---|---|
| DATED:  May 6, 2021 | Respectfully submitted,<br><br>KIRKLAND & ELLIS LLP<br><br>*/s/ Barbara N. Barath*<br>Brandon H. Brown<br>bhbrown@kirkland.com<br>Barbara N. Barath<br>barbara.barath@kirkland.com<br>KIRKLAND & ELLIS LLP<br>555 California Street<br>San Francisco, CA 94104<br>Telephone: (415) 439-1400<br>Facsimile:  (415) 439-1500<br><br>Christopher M. Lawless<br>christopher.lawless@kirkland.com<br>KIRKLAND & ELLIS LLP<br>555 South Flower Street<br>Los Angeles, CA 90071<br>Telephone: (213) 680-8400<br>Facsimile: (213) 680-8500<br><br>Gregory S. Arovas (*pro hac vice* to be filed)<br>greg.arovas@kirkland.com<br>Todd M. Friedman (*pro hac vice* to be filed)<br>tfriedman@kirkland.com<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY 10022<br>Telephone: (212) 446-4800<br>Facsimile: (212) 446-4900<br><br>*Attorneys for Plaintiff Intel Corporation* |